IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NEW CINGULAR WIRELESS PCS, LLC, d/b/a AT&T )
MOBILITY )
)
)
    Plaintiff, )
v. )
)
)
MISSISSIPPI PUBLIC SERVICE COMMISSION, ) No. 3:08cv197TSL-JCS
LEONARD BENTZ, in his official capacity as the )
Chairman of the PSC, LYNN POSEY, in his official )
capacity as the Vice Chairman of the PSC, BRANDON )
PRESLEY, in his official capacity as Commissioner of the )
PSC, BAY SPRINGS TELEPHONE CO., INC., BRUCE )
TELEPHONE CO., INC., DECATUR TELEPHONE CO., )
DELTA TELEPHONE CO., INC., FRANKLIN )
TELEPHONE CO., INC., FULTON TELEPHONE CO., )
INC., GEORGETOWN TELEPHONE CO., INC., MOUND )
BAYOU TELEPHONE CORP. (FAIL, INC.), BPM, INC., )
d/b/a NOXAPATER TELEPHONE CO., SMITHVILLE )
TELEPHONE CO., INC., SLEDGE TELEPHONE CO., )
LAKESIDE TELEPHONE CO., and WINDSTREAM )
MISSISSIPPI, INC., )
)
    Defendants. )

**FILED** SOUTHERN DISTRICT OF MISSISSIPPI MAR 2 8 2008 J.T. NOBLIN, CLERK BY _____ DEPUTY

**COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

<u>Nature of the Action</u>

1.     Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility brings this action seeking declaratory and injunctive relief from a decision of the Mississippi Public Service Commission ("PSC") that is contrary to and preempted by federal law, that is arbitrary and capricious, that is unsupported by record evidence, and that lacks reasoned decision-making.

**Parties, Jurisdiction, and Venue**

2.  Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T Mobility") is a Delaware limited liability company with its principal place of business in Georgia. AT&T Mobility provides wireless telecommunications service throughout much of Mississippi. AT&T Mobility is a commercial mobile radio service ("CMRS") provider — *i.e.*, a wireless provider — within the meaning of the Telecommunications Act of 1996, 47 U.S.C. § 251, *et seq.* ("1996 Act").

3.  Defendant the Mississippi Public Service Commission ("PSC") is an agency of the State of Mississippi. The PSC is a "State commission" within the meaning of the 1996 Act.

4.  Defendant Leonard Bentz is the Chairman, Defendant Lynn Posey is the Vice Chairman, and Defendant Brandon Presley is a Commissioner of the Mississippi PSC. They are sued in their official capacities for declaratory and injunctive relief only.

5.  Defendant Bay Springs Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 409, 160 N. Court St., Bay Springs, MS 39422.

6.  Defendant Bruce Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 489, Bruce, MS 38915.

7.  Defendant Decatur Telephone Co. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 146, Decatur, MS 39327.

8.  Defendant Delta Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 217, Louise, MS 39097.

9.  Defendant Franklin Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 446, Bude, MS 39630.

10. Defendant Fulton Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is 402 West Beene St., Fulton, MS 38843.

11. Defendant Georgetown Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 137, 1158 E. Railroad Ave., Georgetown, MS 39078.

12. Defendant Mound Bayou Telephone Corp. (Fail, Inc.) is a Mississippi corporation with its principal place of business in Mississippi. Its business address is 101 E. Main St., Mound Bayou, MS 38762.

13. Defendant BPM, Inc., d/b/a Noxapater Telephone Co. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 727, Bay Springs, MS 39422.

14. Defendant Smithville Telephone Co., Inc. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 117, Smithville, MS 38870.

15. Defendant Sledge Telephone Co. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 68, Sunflower, MS 38778.

16. Defendant Lakeside Telephone Co. is a Mississippi corporation with its principal place of business in Mississippi. Its business address is PO Box 68, Sunflower, MS 38778.

17. Defendant Windstream Mississippi, Inc. (formerly Alltel Mississippi, Inc.) is a Mississippi corporation with its principal place of business in Mississippi. Its business address is 2324 Columbia St., PO Box 758, Prentiss, MS 39474.

18. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331. The Court also has subject matter jurisdiction over the action pursuant to the Supremacy

Clause of the U.S. Constitution and 28 U.S.C. § 1343(a)(3). Should 47 U.S.C. § 252(e)(6) be construed as jurisdictional, this Court also has jurisdiction under that provision.

19. Venue is proper in this District under 28 U.S.C. § 1391. Venue is proper under section 1391(b)(1) because the PSC resides in this District. Venue is proper under section 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District, in which the PSC sits.

## Regulatory Background

20. Until the 1990s, local telephone service was generally provided by a single, regulated company that held an exclusive franchise to provide such service. The companies that provided service under this system are known as incumbent local exchange carriers (or "ILECs"). *See* 47 U.S.C. § 251(h). Congress enacted the 1996 Act in order to replace this system with a "pro-competitive, de-regulatory" framework for the provision of telecommunications services. S. Conf. Rep. No. 104-230, at 113 (1996).

21. To enable that transition to competition, Congress placed certain duties on all local exchange carriers, including both incumbent carriers and new entrants. Among these are the "duty to provide dialing parity to competing providers of telephone exchange service and telephone toll service," 47 U.S.C. § 251(b)(3), and the "duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications," *id.* § 251(b)(5).

22. The term "dialing parity" means "that a person that is not an affiliate of a local exchange carrier is able to provide telecommunications services in such a manner that customers have the ability to route automatically, without the use of any access code, their telecommunications to the telecommunications services provider of the customer's designation from among 2 or more telecommunications services providers (including such local exchange

4

carrier)." *Id.* § 153(15). Thus, all local exchange carriers are "required to permit telephone exchange service customers within a defined local calling area to dial the same number of digits to make a local telephone call, notwithstanding the identity of a customer's or the called party's local telephone service provider."[1]

23. Wireless carriers such as AT&T Mobility are "entitled to receive the benefits of local dialing parity," *Second Report and Order* ¶ 65.

24. "Reciprocal compensation" refers to the compensation paid when one carrier's customer makes a local phone call to a customer served by another carrier; the reciprocal compensation is paid to the terminating carrier for the cost of terminating the call. Reciprocal compensation rates are to be determined by a state commission according to the pricing standards in section 252(d)(2), which requires that rates be set "on the basis of a reasonable approximation of the additional costs of terminating such calls." 47 U.S.C. § 252(d)(2)(A)(ii). The FCC has clarified that the "additional cost" standard here is equivalent to "the forward-looking, economic cost-based pricing standard" that the FCC had already established elsewhere for "interconnection and unbundled elements." *Local Competition Order*[2] ¶¶ 673, 1054.[3] That cost-based pricing standard is known as "Total Element Long Run Incremental Cost," or "TELRIC." *See generally id.* ¶¶ 672-93.

---

[1] Second Report and Order and Memorandum Opinion and Order, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 19392, ¶ 64 (1996) ("*Second Report and Order*") (subsequent history omitted); *see also* 47 C.F.R. § 51.207 (same).

[2] First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15499 (1996) ("*Local Competition Order*") (subsequent history omitted).

[3] The FCC has also established two other alternatives (proxy rates or a so-called "bill and keep" arrangement).

25. Wireless carriers can invoke the reciprocal compensation obligation of section 251(b)(5). As the FCC has held, all "LECs are obligated, pursuant to section 251(b)(5) and the corresponding pricing standards of section 252(d)(2) to enter into reciprocal compensation arrangements with CMRS providers, including paging providers, for the transport and termination of traffic on each other's networks." *Id.* ¶ 34.

26. The private defendants in this case (collectively, the "rural LECs" or "RLECs") are ILECs within the meaning of the 1996 Act. Upon request from a competing carrier, including CMRS providers such as AT&T Mobility, ILECs must negotiate to implement the requirements of 47 U.S.C. § 251(b) and (c), including those discussed above. *See id.* § 252(a). If those negotiations do not resolve all issues, either carrier can petition the state commission to adjudicate disputes over the terms and provisions of such agreements. *See id.* § 252(b). In such a proceeding — which is known in the 1996 Act as an "arbitration," but which is not like a private commercial arbitration — the state commission or, as here, its designated arbitrator, is required to rule on those disputes in accordance with the requirements of sections 251 and 252, including the regulations adopted by the FCC. *See id.* § 252(c), (d). The state commission is required to "conclude the resolution of any unresolved issues not later than 9 months after the date on which the [incumbent LEC] received the request [for negotiations] under this section." *Id.* § 252(b)(4)(C).

27. The resulting interconnection agreement, which may contain both voluntarily negotiated provisions and those that implement rulings of the arbitrator, must be submitted to the state commission for its review and approval. *See id.* § 252(e)(1). Under section 252(e)(2), the commission may reject a voluntarily negotiated provision only if it finds that the provision "discriminates" against some other telecommunications carrier, or if the provision "is not

consistent with the public interest, convenience, and necessity." *Id.* § 252(e)(2)(A)(i)-(ii). The commission may reject an arbitrated provision only if it finds that "the agreement does not meet the requirements of [47 U.S.C. §] 251, including the regulations prescribed by the [FCC] pursuant to section 251, or the [pricing] standards set forth in [47 U.S.C. § 252](d)." *Id.* § 252(e)(2)(B).

28. The 1996 Act provides that "[n]o State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." *Id.* § 252(e)(4). Instead, "[i]n any case in which a State commission makes a determination under [47 U.S.C. § 252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of [47 U.S.C. §] 251 and [§ 252]." *Id.* § 252(e)(6).

## The PSC Proceeding

29. After negotiations between AT&T Mobility and the RLECs did not yield complete interconnection agreements, on August 10, 2006, the RLECs filed petitions for arbitrations against AT&T Mobility in PSC Docket 2006-AD-431.[4] The PSC appointed arbitrators (the "Arbitration Panel") to hear the contested issues, and an evidentiary hearing was conducted on February 14-15, 2007. The Arbitration Panel issued the Arbitration Order[5] on October 10, 2007.

30. Two aspects of the Arbitration Order are relevant to this case. *First*, through its resolution of Issues 6, 7, and 8, the Arbitration Panel set a reciprocal compensation rate (of 1.7 cents per minute) in a manner and at a level that is inconsistent with the 1996 Act, the FCC's implementing rules, and the record developed in this proceeding.

---

[4] That docket was subsequently consolidated with a similar docket (2006-AD-430)

[5] *See* Arbitration Order, *Petition for Arbitration Under the Telecommunications Act with Cingular Wireless, LLC*, Docket No. 2006-AD-431 (Miss. Pub. Serv. Comm'n Oct. 10, 2007) (attached hereto as Exh. 1).

31. *Second*, in its resolution of Issue 13, the Arbitration Panel acted in a manner that is inconsistent with the 1996 Act, the FCC's rules, and the record in this proceeding by not requiring the RLECs to provide AT&T Mobility with dialing parity. In particular, the Arbitration Panel did not require the RLECs to allow their customers to make calls to AT&T Mobility customers as local calls in all instances when the AT&T Mobility customer's number is assigned to the same local exchange; instead, the Arbitration Panel allowed the RLECs to force their customers to dial a "1" as to certain calls to AT&T Mobility customers, potentially even including calls destined for a next-door neighbor. *See* Arbitration Order at 28-31.

32. The Arbitration Order required the parties to prepare interconnection agreements conforming to its rulings. *See id.* at 40. These conforming interconnection agreements were prepared and submitted to the Arbitration Panel, which issued and filed on January 29, 2008, a Supplemental Arbitration Order with the PSC.[6] Along with the Supplemental Arbitration Order, the Arbitration Panel filed with the PSC an Exhibit A, which was the conformed arbitrated interconnection agreement between the RLECs and AT&T Mobility. *Id.* At the same time, the Arbitration Panel held that the "Agreement shall be effective the 1st day of March, 2008." *Id.* at 2.

33. Pursuant to the PSC's Rules for conducting Section 252 Arbitrations,[7] AT&T Mobility timely filed a set of objections before the PSC on February 5, 2008, urging the PSC to modify the conforming agreements as to the dialing parity and reciprocal compensation holdings discussed above. The PSC has taken no action on those objections.

---

[6] *See* Supplemental Arbitration Order, *Petition for Arbitration Under the Telecommunications Act with Cingular Wireless, LLC*, Docket No. 2006-AD-431 (Miss. Pub. Serv. Comm'n Jan. 29, 2008) (attached hereto as Exh. 2).

[7] Rule X at page 23, MPSC Docket No. 95-UA-358, Subdocket: Section 252 Procedures, adopted by Order dated August 23, 1996.

8

34. Under the 1996 Act, if the state commission does not take action "within 30 days after submission by the parties of an agreement adopted by arbitration under subsection (b) of this section, the agreement shall be deemed approved." 47 U.S.C. § 252(e)(4).

### First Claim for Relief

35. Plaintiffs incorporate paragraphs 1-34 as if set forth completely herein.

36. The decisions in the Arbitration Order and Supplemental Arbitration Order as to reciprocal compensation (Issues 6, 7, and 8, including all subparts thereof) and the portions of the interconnection agreements that implement those decisions are inconsistent with, and do not meet the requirements of, the 1996 Act, and the FCC's binding orders and regulations. Moreover, those decisions are arbitrary and capricious, inconsistent with the record evidence, reflect a failure to engage in reasoned decisionmaking, and are otherwise unlawful and preempted.

### Second Claim for Relief

37. Plaintiffs incorporate paragraphs 1-36 as if set forth completely herein.

38. The resolution of Issue 13 (relating to the obligation of the RLECs to permit their customers to call AT&T Mobility customers without dialing "1" in all cases when the AT&T Mobility customer's number is assigned to the same local calling area) in the Arbitration Order and the Supplemental Arbitration Order and the portions of the interconnection agreements that implement that decision are inconsistent with, and do not meet the requirements of, the 1996 Act and the FCC's binding orders and regulations. Moreover, those decisions are arbitrary and capricious, inconsistent with the record evidence, reflect a failure to engage in reasoned decisionmaking, and are otherwise unlawful and preempted.

## Prayer for Relief

WHEREFORE, AT&T Mobility prays that the Court enter an order:

1. Declaring that the Arbitration Order, the Supplemental Arbitration Order, and the resulting interconnection agreements between AT&T Mobility and the RLECs do not meet the requirements of the 1996 Act and are unlawful and preempted by federal law as to the issues identified in this complaint;

2. Enjoining all defendants, and all parties acting in concert therewith, from seeking to enforce those unlawful decisions and the relevant portions of the relevant interconnection agreements against AT&T Mobility;

3. Ordering the PSC to set a new reciprocal compensation rate in accordance with the FCC's rules and the existing record as to an appropriate TELRIC rate and to require the RLECs to comply with federal law regarding dialing parity;

4. Ordering the PSC to award retroactive damages to AT&T Mobility based on any difference between reciprocal compensation rate set in the Arbitration Order and the lawful correct rate set on remand[8]; and

5. Granting AT&T Mobility such further relief as the Court may deem just and reasonable.

---

[8] *See BellSouth Telecommunications, Inc. v. Georgia PSC*, 400 F.3d 1268, 1271 (11th Cir. 2005) ("In light of the Supreme Court's interpretation of § 252(e)(6), we see no basis to question the power of the district court, acting under the ordinary federal question jurisdiction of 28 U.S.C. § 1331, to award relief by requiring the GPSC, upon remand, to recompense BellSouth for any damages suffered as a result of the erroneous rates set by the GPSC.").

*Of Counsel*:

Thomas B. Alexander
General Attorney
AT&T MISSISSIPPI
175 East Capitol Street
Landmark Center, Suite 790
Jackson, MS 39205
(601) 961-1700

Michael Cross
General Attorney
AT&T MOBILITY LLC
5565 Glenridge Connector
Suite 1765
Atlanta, GA 30342
(404) 236-6953

Mark J. Ashby
General Attorney
AT&T MOBILITY LLC
5565 Glenridge Connector
Suite 1797
Atlanta, GA 30342
(404) 236-6953

Sean A. Lev*
Stuart Buck*
KELLOGG, HUBER, HANSEN, TODD,
    EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900


March 28, 2008

Respectfully submitted,

*/s/ John C. Henegan*

John C. Henegan, MS Bar No. 2286
*Lead Counsel*
Erin P. Lane, MS Bar No. 100023
BUTLER, SNOW, O'MARA, STEVENS
& CANNADA, PLLC
17th Floor, AmSouth Plaza
210 East Capitol Street
Jackson, MS 39201
(601) 985-4530
john.henegan@butlersnow.com
erin.lane@butlersnow.com

---

Jackson 2805716v.1

\* Applying for admission Pro Hac Vice.